Grafton
No. 89-237

THE STATE OF NEW HAMPSHIRE

v.

STEPHEN J. GOODEN

November 9, 1990

*John P. Arnold*, attorney general (*William H. Lyons*, assistant attorney general, on the brief and orally), for the State.

*W. Kirk Abbott, Jr.*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BATCHELDER, J. The defendant, Stephen J. Gooden, was convicted after a jury trial in Superior Court (*Barry*, J.) of possession of cocaine and possession of cocaine with intent to distribute, RSA 318-B:2, I, :26 (1984) (current version at Supp. 1989). The defendant raises three issues on appeal. First, he maintains that he was denied his right to confrontation when the trial court precluded him from cross-examining a police officer concerning information provided by an informant about ongoing, confidential drug investigations. Second, the defendant asserts that the court admitted hearsay testimony regarding a non-witness' observation that the informant was met by a white male at the defendant's residence during the "controlled buy." Finally, he argues that the multiple charges of possession with intent to distribute and simple possession subjected him to double jeopardy. For the reasons set forth below, we affirm.

The defendant's problems began on December 30, 1986, when his friend, Stephen Garneau, was arrested for driving while intoxicated ("DWI"), second offense. In exchange for having the charge against him dropped, Garneau offered to provide the police with information regarding drug trafficking in the Campton area.

Trooper Terrence Kinneen of the State Police was in charge of the investigation. After an initial interview with Garneau, Kinneen ar-

ranged for a "controlled buy" by Garneau to test Garneau's information regarding the presence of cocaine at the defendant's residence. On January 9, 1987, Trooper Kinneen and a fellow trooper met with Garneau and searched his person and vehicle to ensure that he was not carrying drugs. Trooper Kinneen then gave Garneau $325 and followed him to the defendant's residence. He repeatedly drove by the house until he saw Garneau pulling out of the driveway. He followed Garneau back to an agreed location, where he conducted a search of Garneau and his vehicle. The search produced a white, powdery substance, which was later analyzed and identified as cocaine. Garneau no longer had in his possession the money which Trooper Kinneen had earlier given him.

As a result of the "controlled buy," Garneau's DWI charge was dropped. However, he continued to provide information to Trooper Kinneen. For this information, the State Police agreed to pay Garneau an amount of money proportionate to the amount of drugs ultimately seized.

On January 17, 1987, the police executed a search warrant at the defendant's home. On the bureau in the bedroom they found two bags of a white, powdery substance, a large bag containing 274 grams and a small bag containing 26 grams. The powder was later analyzed and identified as cocaine. Next to the cocaine on the bureau was a Fischer-Ainsworth scale, a sophisticated model which permits the user to eliminate the weight of packaging from the amount being measured. The police also recovered a jar of inositol, a vitamin B supplement which is often used to dilute or "cut" cocaine. Elsewhere in the bedroom they found a loaded handgun and a datebook with notations, believed to be a ledger of cocaine transactions. The police also seized paraphernalia commonly used to ingest cocaine, including a razor blade, two mirrors, a vial, a spoon, and a cocaine "tooter." No money was found.

At trial, the defendant raised an entrapment defense. He maintained that the cocaine belonged to Garneau and that he found it in his woodstove the night before the search. Although he admitted distributing cocaine for Garneau during the fall of 1986 to assist Garneau in reducing his large drug-related debt, the defendant insisted that he had refused to become further involved with Garneau's drug dealing.

On direct examination, the defendant gave the following account of the events that occurred the evening before the police searched his home. After discovering the cocaine, the defendant called Garneau,

who came to his house. The two argued over the presence of the cocaine in the defendant's house, and Garneau refused to remove it. Two of the defendant's friends arrived shortly thereafter, and the four played cards for several hours. During the card game Garneau went to the bathroom several times to use cocaine. Several hours after Garneau left on the morning of the raid, he telephoned the defendant to confirm that the cocaine was still in the defendant's house.

On appeal, the defendant first contends that he was denied his constitutional right to confrontation, under both the United States and New Hampshire Constitutions, when the court precluded him from recross-examination of Trooper Kinneen about the basis for his previously articulated opinion that Garneau was credible and reliable, after Kinneen had testified on redirect examination that Garneau had given him other reliable information about large-scale drug operations. He also contends the judge abused his discretion in limiting the recross-examination. In opposition, the State argues that the reliability and credibility of the informant was not an issue before the court, and that inquiry into this collateral matter would have confused the jury and wasted time.

■ ■ The trial court has broad discretion in determining the scope of cross-examination. *State v. Isaacson*, 129 N.H. 438, 440, 529 A.2d 923, 924 (1987). We will not overturn the trial court's ruling on the scope of cross-examination absent an abuse of discretion. *Id.* To show an abuse of discretion reversible on appeal, a defendant must demonstrate that the trial court's ruling was "clearly untenable or unreasonable to the prejudice of his case." *State v. Hood*, 131 N.H. 606, 608–09, 557 A.2d 995, 997 (1989).

The defendant relies on *State v. Ramos*, 121 N.H. 863, 435 A.2d 1122 (1981) to support his argument that denial of the right to cross-examine an adverse witness regarding matters that are important to the outcome of the trial was an abuse of discretion. However, his reliance on *Ramos* is misplaced. In *Ramos*, the trial court had prohibited all cross-examination of the testifying officer about his knowledge of and compliance with departmental policy and procedure. The defendant sought to establish that the officer's failure to follow those procedures provided him with a motive to fabricate his version of the incident. Here, the trial judge gave the defendant wide latitude in examining witnesses as to Garneau's reliability and credibility. Consequently, we do not agree with the defendant's assertion that he was totally foreclosed from cross-examining Trooper Kinn-

een regarding the basis for his opinion that Garneau was reliable and credible.

 The testimony introduced at trial provided the jury with sufficient information with which to evaluate the informant's credibility. The defendant established that there were pending bad check charges which Garneau had yet to answer, that there had been a DWI charge pending against him, that he had sold cocaine, that he had had domestic problems that required police intervention, and that he had defaulted on speeding tickets in the Bristol District Court. Any further information concerning an ongoing, unrelated drug investigation would have been cumulative, and the trial court's denial of the defendant's attempt to pursue this line of questioning did not amount to an abuse of discretion. *United States v. Fortes*, 619 F.2d 108, 118 (1st Cir. 1980) (where the trial court permitted broad cross-examination of the principal witness on his credibility, the court's refusal to permit inquiry into cocaine sales by the witness was not an abuse of discretion).

The defendant next argues that Trooper Kinneen's testimony that a second trooper had observed a white male meeting Garneau at the "controlled buy" at the defendant's house was hearsay, admitted in violation of the defendant's right to confront and cross-examine the non-testifying trooper. The defendant argues that introduction of the hearsay evidence was not permitted because there was neither proof that the non-testifying trooper was unavailable nor sufficient indicia of trustworthiness to guarantee the reliability of this evidence. We disagree.

 Hearsay is an out-of-court statement of a person not testifying at trial offered for the truth of the matter asserted. N.H. R. Ev. 801(c). Here, the testimony was offered to show the basis for Trooper Kinneen's opinion that his informant was reliable, not to prove that the second trooper saw the white male. The statement was therefore not hearsay. Where "an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but *without reference to the truth of the matter asserted*, the hearsay rule does not apply." *State v. Dube*, 130 N.H. 770, 772, 547 A.2d 283, 284 (1988) (citing VI J. WIGMORE, EVIDENCE § 1766, at 250 (Chadbourn rev. 1976)) (emphasis in original).

The defendant's final argument is that he was subjected to double jeopardy when he received consecutive sentences for charges of possession of cocaine with intent to distribute and simple possession, because the simple possession charge was based upon a quantity of

cocaine found in a small bag immediately adjacent to a larger bag, which formed the basis of the charge of possession with intent to distribute. He further argues that the fact that separate packages of cocaine were found is evidence that the entire quantity was held with the intent to distribute.

■■ The double jeopardy prohibition protects a defendant from multiple punishments for the same offense. When cumulative punishments are sought for offenses arising out of a single transaction, the focus of the inquiry is whether "proof of the elements of the crimes *as charged* will in actuality require a difference in evidence." *State v. Stratton*, 132 N.H. 451, 454, 567 A.2d 986, 988 (1989) (quoting *State v. Bailey*, 127 N.H. 811, 813, 508 A.2d 1066, 1068 (1986), itself quoting *Heald v. Perrin*, 123 N.H. 468, 473, 464 A.2d 275, 278 (1983)) (emphasis in original). This "difference in evidence" test has been adopted by this court in evaluating double jeopardy claims under the New Hampshire Constitution. *Id.*; *see also* N.H. CONST. pt. I, art. 16.

The defendant argues that both the large and the small bags of cocaine should have been presented together in support of one charge of possession with intent to distribute, because there was no "difference in evidence." However, this court has rejected similar arguments by defendants in the past. In *State v. Bailey, supra* at 815, 508 A.2d at 1070, we affirmed two convictions for negligent homicide arising from a single incident of driving while intoxicated. Similarly, in *State v. Stratton, supra* at 456, 567 A.2d at 989, this court held that the State was not barred from charging the defendant with multiple offenses for possession of different firearms which were seized during a search of the defendant's home.

■ There was ample separate and distinct evidence presented at trial in support of the two charges. In addition to the large bag of cocaine, the police seized a Fischer-Ainsworth scale, inositol, a ledger, and a loaded handgun. These were all presented as evidence of possession with intent to distribute. To support the simple possession charge, the State introduced the small bag of cocaine and paraphernalia commonly used to ingest cocaine, including a razor blade, two mirrors, a vial, a spoon, and a cocaine "tooter." Therefore, we find the evidence sufficient to support the two convictions.

680

■ In rejecting the defendant's final claim of error, we note that prosecutors have broad discretion in bringing charges against an accused, because of the necessarily fragmentary nature of the evidence at the charging stage. *State v. Bergeron*, 115 N.H. 70, 72, 333 A.2d 721, 723 (1975). The trial court has the power to correct any errors that might be made in the exercise of that discretion. *Id.* On these facts, we find no error in the trial court's judgment.

*Affirmed.*

JOHNSON and HORTON, JJ., did not sit; the others concurred.