Hillsborough
No. 91-016

THE STATE OF NEW HAMPSHIRE

v.

JOHN A. BAKER

April 16, 1992

*John P. Arnold*, attorney general (*Ward E. Scott*, attorney, on the brief), by brief for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief for the defendant.

BROCK, C.J.   The defendant, John A. Baker, appeals from his conviction in the Superior Court (*Groff*, J.) of driving after being certified as an habitual offender, asserting that there was insufficient evidence for the jury to find, beyond a reasonable doubt, that he knowingly violated RSA 262:23 (Supp. 1991). We affirm.

On October 31, 1979, the superior court certified John A. Baker, date of birth September 5, 1953, as an habitual offender. On February 13, 1987, at the defendant's request, the department of safety (department) held a hearing at which the defendant requested that his license be restored. However, because the defendant had been convicted of three separate motor vehicle offenses after he had been certified as an habitual offender, his request was denied. At the time of the denial, the hearings officer informed the defendant that he would not be eligible to apply for restoration of his license until December 3, 1988, four years after the date of his last conviction. The defendant was told that he would have to petition the department for another hearing and submit evidence from his department of corrections supervisor concerning his parole or probation status as well as evidence that he had been treated for his alcohol abuse problem.

On September 22, 1987, the defendant applied for a non-driver identification from the division of motor vehicles (DMV). With his application the defendant was required to submit two forms of identification. Baker supplied the information, indicating that his date of birth was September 5, 1953.

Less than two months later, on November 2, 1987, the defendant applied for a new driver's license from the DMV. He filled out the preliminary information form, indicating that his date of birth was September 4, 1953, and providing his birth certificate as proof. It is undisputed that all the personal information the defendant supplied on the front of the form was correct. The back of the form contained two additional sections, B and C, followed by a space for the applicant's signature. Section B was to be checked if the applicant had "not previously held a driver's license in this or any other state or country." The defendant's application had an "X" marked in the box, but whether he or someone else made the mark was disputed at trial. Section C, which requested specific information regarding any previously held licenses, was left blank. The defendant signed the form, was given an appointment to take a driver's test, which he passed, and was issued a new license.

At the time of the defendant's application, the DMV kept all drivers' records on a computer, accessible by a combination of an individual's name and date of birth. A file with the exact same name, but a different birth date, was considered a different person. In a case such as this one, a search for John A. Baker, with a date of birth of 9/4/53, would not reveal any information on John A. Baker, date of birth 9/5/53.

Due to the computer system, even though the defendant amassed four traffic violations in 1988 on his "new" license, his previous license suspension as an habitual offender did not come to light. It was not until his supervisor from the department of corrections contacted Trooper Massaro that the DMV and State Police were notified of his habitual offender status. Upon learning of the violation, the police arrested the defendant for driving after being certified as an habitual offender. The defendant was subsequently indicted and convicted of this charge.

The defendant appeals his conviction on the grounds of insufficiency of the evidence; specifically, he claims that because the State issued him a license, it was reasonable for the defendant to believe he could drive. The State counters that there was sufficient evidence for the jury to conclude that the defendant acted knowingly, and, therefore, the conviction must be affirmed.

█ In order to convict the defendant, the jury must have found, beyond a reasonable doubt, that the defendant knowingly drove a "motor vehicle on the ways of this state while an order of the director or the court prohibiting such driving remain[ed] in effect." RSA 262:23 (Supp. 1991). The legislature has defined "knowingly" in RSA 626:2, II(b): "[A] person acts knowingly with respect to conduct or to a circumstance that is a material element of an offense when he is aware that his conduct is of such nature or that such circumstances exist." To prove that the defendant acted knowingly, the State had to prove knowledge as to all material elements, RSA 626:2, I, or, in other words, that he knowingly operated a vehicle while the habitual offender prohibition was still in effect.

█ Upon appeal of a conviction raising sufficiency of the evidence as an issue, all evidence and reasonable inferences drawn therefrom will be viewed in the light most favorable to the State. *State v. Ebinger*, 135 N.H. 264, 266, 603 A.2d 924, 925 (1992). "The defendant bears the burden of showing that no rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Stratton*, 132 N.H. 451, 459, 567 A.2d 986, 991 (1989) (citation omitted).

In this case, there was ample evidence to support the verdict rendered by the jury. The State introduced testimony of the hearings examiner, Andre Normandin, that a hearing for Baker's decertification as an habitual offender was held and the defendant's petition was denied. Further, Normandin stated that he informed the defendant that he would not be able to petition for decertification until December 1988, and that documentation regarding his alcohol abuse

rehabilitation and parole status would be required. Although at trial the defendant admitted that he knew he needed to provide this evidence, at no time did he supply this information to the DMV.

Additional testimony by Baker's department of corrections supervisor further buttressed the State's case. According to his supervisor, the defendant was required to check in on a regular basis and report anything "new." Although the supervisor testified that he had briefly seen Baker's new license, Baker did not disclose his numerous traffic violations. Such violations would have been considered a "major problem," and the DMV would have been notified. The jury could certainly have inferred that Baker failed to disclose these infractions in order to prevent his supervisor from informing the DMV of his previous habitual offender status, and, thus, he knowingly violated the statute.

The defendant disputed Normandin's testimony, stating that the examiner told him that "[his] four years would be all over with in the fall of '87." Further testimony revealed that the defendant, believing his habitual offender status would be removed in the fall of 1987, thought he could apply for a new license at that time. Yet, the defendant applied for a *non-driver* identification on September 22, 1987, using his September 5, 1953, date of birth. This was the defendant's first application for identification and came some eight years after he lost his original license. Then, shortly after learning that his birth date was really September 4, 1953, the defendant applied for a new driver's license. His application for the new license indicated that he had not previously held a driver's license in New Hampshire or any other state, and information concerning his previous revocation was conspicuously absent. The jury could have easily concluded that the defendant saw an opportunity to obtain a new license when he found evidence that his birthdate was different than he had previously thought, and knowing of his habitual offender status, chose to hide that fact from the DMV in order to procure the right to drive.

■■■ The State presented an abundance of evidence to support the conviction of the defendant. The only evidence offered by the defendant was his own testimony, which the jury was free to disbelieve. *State v. Eason*, 133 N.H. 335, 343, 577 A.2d 1203, 1208 (1990). When there is conflicting testimony, we defer to the findings of the jury unless no reasonable person could have come to the same conclusion. *State v. Smith*, 127 N.H. 433, 436–37, 503 A.2d 774, 776 (1985). The jury could have believed the State's evidence and concluded that, even though the defendant had been issued a driver's

license by the State, he knowingly operated a vehicle as an habitual offender. Therefore, the conviction must stand.

*Affirmed.*

All concurred.