Cheshire
No. 92-151

### THE STATE OF NEW HAMPSHIRE

v.

### CECILE M. ALLCOCK

July 27, 1993

*Jeffrey P. Howard*, attorney general (*Susan G. Morrell*, assistant attorney general, on the brief), for the State.

*W. Kirk Abbott, Jr.*, assistant appellate defender, of Concord, by brief for the defendant.

THAYER, J. The defendant, Cecile Allcock, was convicted of attempted possession of a controlled drug, marijuana, with intent to dispense, RSA 318-B:26, I(c)(5) (1984 & Supp. 1992); RSA 629:1 (1986), after a jury trial in Superior Court (*Barry*, J.). On appeal, she argues that there was insufficient evidence for the jury to find that she took a "substantial step" towards commission of the crime. Because there is ample evidence on the record to support the jury's verdict, we affirm.

The defendant was the target of an undercover operation conducted by Detective Carl Patten, Jr. of the Keene Police Department. On August 3, 1989, Patten contacted a drug dealer, Marc Pelow, and asked about purchasing a quarter pound of marijuana. Pelow phoned the Allcock home, and the two men later purchased marijuana from Christina Allcock, the defendant's daughter. On August 22, 1989, Patten again contacted Pelow and asked him to find a buyer for several pounds of marijuana. Pelow indicated that the defendant would take "a couple" pounds of marijuana, and told Patten to call back. Patten called Pelow on the following day and Pelow told him that the defendant wanted two pounds. On August 24, 1989, Patten called Pelow and told him he had the marijuana and asked where they should meet. During this conversation, Pelow informed Patten that the defendant only wanted one pound.

Patten drove to Pelow's house, where Pelow called the defendant and told her they would meet her shortly. The two men used Pelow's car to drive to Cold River Road in Walpole, and waited for the defendant. When the defendant arrived, she asked to meet at a more secluded spot. Pelow drove about a quarter of a mile from where they had originally stopped, and the defendant followed and parked behind Pelow's vehicle.

Pelow introduced Patten to the defendant, and Patten showed her the marijuana he had for sale. Patten was authorized to wear an electronic transmitter to monitor and record the transaction with the defendant. *See* RSA chapter 570-A (1986 & Supp. 1992). The defendant commented on the color of the marijuana and was apparently displeased that Patten had brown marijuana instead of green marijuana. The defendant said, "I'm sitting with two pounds of this stuff [brown marijuana] I can't get rid of. He promised me green." She

also stated that the marijuana smelled different. Patten had three bags of marijuana and asked what price the defendant would pay for all of it. The defendant responded that she would give him "eleven." Patten then asked how much the defendant would pay for two bags of marijuana. She again indicated that she wished the marijuana was green and that she wished she had the "magic touch to make it green."

The defendant conceded that Patten's marijuana was not the same kind of brown marijuana she already had, but noted that it did not matter because brown marijuana "just won't move." Patten made another offer, and the defendant said she could not accept because she would not have money to buy green marijuana if she bought Patten's marijuana. She told Patten that she expected green marijuana to be available soon, and that she could get it for about $1,200 per pound. She also said that she could make a "couple hundred bucks" on green marijuana. Patten stated that he needed money, and again asked the defendant how much she would give him for a bag of marijuana. The defendant stated that if she had extra money, she could buy the marijuana, but all she could afford was a pound of green marijuana at $1,800. Patten then offered to sell all of the marijuana he had with him for $1,800, and the defendant again said she would not buy it because she could not get rid of it.

Patten next asked the defendant the price of green marijuana. She told him it averaged between $1,500 and $1,600 a pound, but that she had one source who could get it for $600 to $700 a pound. Patten asked when the defendant next expected to buy green marijuana, and she said she hoped it would not be longer than a week since her supply had dried up. She again indicated that she wished Patten had green marijuana, which she could "get rid of" in an hour, but concluded that she could not purchase the brown marijuana. Patten made one last offer to reduce the price of the brown marijuana, but the defendant declined.

Patten ended the conversation by asking if the defendant wanted him to call her if he could get green marijuana. She indicated that he should call her. When Patten asked if the defendant could sell five pounds of green marijuana, she responded, "if you get five, I can move five pounds within three weeks. That's nothing for me." Patten told her he would know whether he could get green marijuana in a few days. She responded by asking him to contact her as soon as he obtained it and said she would see what she could do with it. Both the defendant and Patten left the scene, and the defendant was ultimately arrested on September 26, 1989.

The jury convicted the defendant of attempted possession of marijuana with intent to dispense. RSA 629:1 (1986) provides:

"I. A person is guilty of an attempt to commit a crime if, with a purpose that a crime be committed, he does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step toward the commission of the crime.

II. As used in this section, 'substantial step' means conduct that is strongly corroborative of the actor's criminal purpose."

During trial, the defendant testified that she did not have the intent to possess the marijuana, and claimed she was doing private "undercover" work to learn about Patten and give the police evidence to use against him. On appeal, she argues that there was insufficient evidence to prove that she took a substantial step towards commission of the crime.

 In order to prevail on her claim that there was insufficient evidence to convict, the defendant must show "that no rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Baker*, 135 N.H. 447, 449, 606 A.2d 309, 310 (1992) (quotation omitted). The defendant bears a heavy burden on appeal in that the "evidence and reasonable inferences drawn therefrom will be viewed in the light most favorable to the State." *Id.* The defendant argues that meeting with Patten and discussing prices for green and brown marijuana does not amount to a substantial step. She notes that she did not produce any money to purchase marijuana, and that she refused to purchase the marijuana that Patten offered for sale.

██ The proper focus of the inquiry is whether the defendant's conduct "strongly corroborate[s] clear criminal intent." *United States v. Dworken*, 855 F.2d 12, 19 (1st Cir. 1988). The act of taking a substantial step towards the commission of a crime has been described as behavior "of such a nature that a reasonable observer, viewing it in context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute." *Id.* at 19–20 (quotation omitted). The defendant agreed to meet with Pelow and his source, Patten, to purchase one pound of marijuana. She met the men and requested to move to a more secluded spot. She inspected the marijuana, smelled it, and voiced her displeasure that it was brown. She repeatedly stated that she wanted to buy green marijuana, although she valued the brown marijuana at $1,100. She

evidenced familiarity with other dealers and the market price for green marijuana, stated her ability and intent to resell or "move" marijuana, and asked Patten to contact her if he obtained green marijuana.

■ Viewed in the light most favorable to the State, there was ample evidence from which the jury could find that the defendant had the intent to violate the law, and that she took a substantial step towards that aim. In light of all this evidence, the mere fact that the defendant refused to purchase the marijuana offered by Patten does not satisfy her burden on appeal. The failure to go through with the sale "means only that the purchase was not consummated, not that there was no attempt to purchase." *United States v. Rivera-Sola*, 713 F.2d 866, 870 (1st Cir. 1983). The defendant's conduct was "strongly corroborative of [her] criminal purpose," RSA 629:1, II (1986), and thus constituted a substantial step towards commission of the crime.

■ The defendant relies on a factually similar case, *United States v. Joyce*, 693 F.2d 838 (8th Cir. 1982), to support her claim that she did not commit the crime of attempt. In *Joyce*, the court held that the defendant abandoned his intent to procure cocaine before he took a substantial step towards commission of the crime. *Id.* at 841. The defendant here, however, did not raise the affirmative defense of voluntary renunciation or abandonment at trial, *see State v. Patten*, 126 N.H. 227, 489 A.2d 657 (1985); RSA 629:1, III (1986). Accordingly, we do not rely on *Joyce* as support for the defendant's argument and therefore affirm the conviction.

*Affirmed.*

All concurred.