Strafford
No. 94-745

THE STATE OF NEW HAMPSHIRE

v.

BRUCE SEARLES

July 24, 1996

*Jeffrey R. Howard*, attorney general (*Cynthia L. White*, assistant attorney general, on the brief and orally), for the State.

*Joachim Barth*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BRODERICK, J. The defendant, Bruce Searles, was convicted of two counts of second degree assault. *See* RSA 631:2 (Supp. 1995). On appeal, he argues that the Superior Court (*Mohl*, J.) erred in allowing the prosecution to introduce expert testimony concerning domestic violence syndrome. We affirm.

At trial, the State presented evidence of the following facts. Shereen Searles lived in Rochester, with the defendant and their three children, Christina, Adam, and Jessie. During the evening of December 10, 1993, eight-year-old Christina and her friend Nicole Glennon were awakened by an argument between Shereen and the defendant, who were in the kitchen. Both Shereen and the defendant had been drinking beer throughout the day. Shereen asked the defendant to leave the house; when he refused, she attempted to leave, but the defendant blocked her exit. They continued to argue, chairs were tipped, and Shereen again tried to leave. The defendant responded by slapping her and putting his hands around her neck.

Nicole heard Shereen yell to Christina for help. By this time, Nicole and Christina had crept from Christina's room, and Nicole saw the defendant choking Shereen. Shereen escaped the defendant's grasp by breaking a beer bottle over his head. The girls then ran back to Christina's room, and Shereen followed them; Jessie was also in the bedroom, in his crib.

When the defendant entered Christina's room, Christina stood between him and Shereen. She testified that she stood there "[s]o my dad wouldn't touch my mom." The defendant ordered Christina out of the way. He then pushed Jessie's wooden crib into his daughter, cutting her ear. The crib overturned and Jessie fell to the floor, crying. The defendant grabbed Shereen and pushed her into the wall. He pulled her back and pushed her into a window, causing it to shatter. Shereen proceeded to take the girls to her bedroom, where she dressed them in sweaters and attempted to open a window so they could escape to call for help. She had difficulty opening the window, so the girls slipped out through the front door. They ran to a pay phone and called the police.

Officer Gary Turgeon found Christina and Nicole at the pay phone. Christina's ear was bleeding, and she was taken by ambulance to a local hospital where she received stitches. Officers Anthony Macaione and Anthony Triano went to the apartment and spoke to both Shereen and the defendant. The officers saw broken glass in the living room and the kitchen. When asked, the defendant said nothing had happened. His speech was slurred, he swayed as he walked, and he smelled of alcohol.

Shereen was shaking and upset. She said she had been strangled and the defendant had put her head through the bedroom window. Officer Macaione observed red marks on her neck and collar bone. Shereen stated that the defendant had pushed Jessie's crib into Christina, who was bleeding when she left the house. The officer saw the crib against the wall and the broken bedroom window.

The defendant was arrested and indicted on two counts of second degree assault. The trial court held a pretrial hearing to consider, among other things, the State's request to offer testimony from an expert in family violence to educate the jury about the effects of such violence on victims. The court, relying upon our decision in *State v. Cressey*, 137 N.H. 402, 628 A.2d 696 (1993), ruled that the State would be permitted to call its expert to explain the general effects of family violence and why victims of such violence might later minimize the offending conduct or recant their accounts of abuse.

At a subsequent pretrial hearing, the court acknowledged that the admissibility of this expert testimony depended to an extent on the nature of the witnesses' testimony at trial. After Shereen, Christina, and several other witnesses testified, the court ruled that the proposed expert testimony was probative of the victims' credibility because it could explain their apparent minimization of their injuries, as well as variations in their accounts of the assaults. Prior to the expert's testimony, the court gave the jury a very specific limiting instruction:

> You will hear testimony . . . regarding certain characteristics or behaviors of persons who are family members who may be the victim of abuse at the hands of another member of the family. This testimony is not intended to prove that any of the witnesses you heard from in this case were abused. And the testimony is being offered simply so you may understand better the testimony of those individuals who did appear as witnesses in the case, that is, on their credibility and for that purpose alone.

The jury ultimately convicted the defendant of both offenses, and this appeal followed.

In *Cressey*, we discussed child sexual abuse accommodation syndrome. *See id.* at 411, 628 A.2d at 702. This syndrome "proceeds from the premise that a child has been sexually abused and seeks to explain the resulting behaviors and actions of the child" when these behaviors and actions "may be puzzling or appear counterintuitive to lay observers." *Id.* Similarly, domestic violence syndrome offers an explanation for particular actions and statements of domestic violence victims that may seem counterintuitive, such as a victim's recantation or minimization of abuse at trial. *See People v. Christel*, 537 N.W.2d 194, 202 (Mich.), *rehearing denied*, 539 N.W.2d 504 (1995); *Cressey*, 137 N.H. at 411–12, 628 A.2d at 702–03. Courts in other jurisdictions have approved the use of expert testimony about the effects of domestic violence to explain such behavior. *See, e.g., Arcoren v. United States*, 929 F.2d 1235, 1240 (8th Cir.), *cert. denied*, 502 U.S. 913 (1991).

■ The defendant has no quarrel with these basic principles. Rather, he argues that the trial court erred in admitting expert testimony in his case because he did not attack the victims' credibility and because he believes the victims did not minimize either their injuries or the defendant's conduct. In addition, the defendant maintains that the evidence was overly prejudicial insofar as it implied the victims had suffered severe abuse at his hands. In reviewing these arguments, we recognize that the determination of the admissibility of expert testimony "rests, in the first instance, within the sound discretion of the trial court." *Cressey*, 137 N.H. at 405, 628 A.2d at 698. We reverse this determination "only if the appealing party can demonstrate that the ruling was untenable or unreasonable and that the error prejudiced the party's case." *State v. Cavaliere*, 140 N.H. 108, 110, 663 A.2d 96, 98 (1995).

■ The defendant first contends that because he did not seek to attack the credibility of either Shereen or Christina, the expert testimony was not relevant. In *Cressey*, we did not limit the admissibility of expert testimony about child sexual abuse accommodation syndrome to cases in which the child's credibility is attacked. *See Cressey*, 137 N.H. at 412, 628 A.2d at 703. As we explained in *State v. Chamberlain*, 137 N.H. 414, 628 A.2d 704 (1993), because there exists the possibility that "a jury may automatically infer from a child's secrecy, inconsistency, or recantation that the child has fabricated his or her testimony," expert testimony "may be beneficial to offer an alternative explanation for the child's specific behavior so that the jury may more accurately

judge the credibility of the child victim." *Id.* at 418, 628 A.2d at 706–07; *see also Cressey*, 137 N.H. at 412, 628 A.2d at 703 (expert testimony may be offered to preempt negative inferences based upon victim's actions). We know of no reason why this rule would not be equally applicable in cases involving expert testimony about domestic violence.

The defendant next suggests that the expert's testimony was irrelevant because the victims did not minimize their injuries or the defendant's conduct in their trial testimony. As discussed above, in the domestic violence context, expert testimony may be relevant when a victim "attempts to hide or minimize the effect of . . . abuse" or "denies or recants the claim of abuse," and this behavior is "incomprehensible to average people." *Christel*, 537 N.W.2d at 202. When this sort of behavior is at issue, the testimony of a qualified expert may aid the jury in assessing the credibility of a domestic violence victim. *Cf. Chamberlain*, 137 N.H. at 418, 628 A.2d at 706–07; *Cressey*, 137 N.H. at 412, 628 A.2d at 702–03.

In this case, after hearing the testimony of Shereen and Christina, as well as several other witnesses, including Nicole, the court concluded that the victims had minimized their injuries, and that this minimization would have appeared counterintuitive to jurors. Indeed, the court was persuaded "on the issue of minimizing the injuries both [as] to the child and her mother," stating that though "[r]ecanting certainly is perhaps stronger than what we have here, . . . I think we're close to it." In determining whether the court's conclusion is supported by the record, we are mindful that "to the extent the finding reflects the court's firsthand observations of the witness's demeanor, it is deserving of considerable deference." *State v. Locke*, 139 N.H. 741, 743, 663 A.2d 602, 604 (1995).

The record reveals that Shereen's initial trial testimony so deviated from her prior statements that the prosecutor requested she be declared an adverse witness. The court granted this request, and the prosecutor thereafter led Shereen through many statements she had made earlier about the incident. Despite this examination, when asked about the defendant grabbing her neck, Shereen testified the defendant hurt her only "a little bit," and at one point she denied suffering any injury. She also stated that a picture depicting her daughter's injuries made Christina's cut look worse than it was. For her part, Christina said she did not want to testify about her father's conduct; she also suggested that her father could not see her when he "moved" Jessie's crib, and that "[h]e didn't really push" her.

Given this testimony, we cannot say the trial court abused its discretion in concluding that evidence had been presented from

which a jury could reasonably find that the victims had minimized their injuries and the defendant's actions, and that this minimization would likely be puzzling to the lay observer. In these circumstances, expert testimony about domestic violence syndrome could provide a reasonable explanation for the victims' changed accounts of their injuries and the events in question. Cf. Chamberlain, 137 N.H. at 418, 628 A.2d at 706–07; Cressey, 137 N.H. at 412, 628 A.2d at 702–03. Accordingly, the expert testimony was properly admitted to assist the jury in evaluating the trial testimony of Shereen and her daughter.

The defendant nonetheless contends that the expert testimony was highly prejudicial because the State did not introduce evidence of the victims' prior accounts of the assaults, thus permitting the jury "to speculate that the assault was more vicious and severe than the actual evidence [at trial] supported." In essence, the defendant argues that the jury had no evidence before it to support minimization. The question, then, is whether the State produced credible evidence of both the victims' injuries and the defendant's conduct against which the jury could compare the victims' trial testimony.

The record shows that the State did produce such evidence. After the trial court permitted the prosecutor to treat Shereen as an adverse witness, the prosecutor examined her about statements she had made before trial — statements, it was clear, that differed from her trial testimony. Harriet LaChance, Shereen's mother, described the marks she saw on Shereen's neck, and Officer Turgeon testified about the wound on Christina's ear. Nicole stated that the defendant was "choking" Shereen, and that she later saw the defendant "put [Shereen's] head through a window." In view of this testimony, we cannot agree with the defendant that the expert testimony invited the jury to speculate that the assaults were in fact worse than the victims had indicated at trial.

The defendant finally argues that the expert testimony was highly prejudicial because it ranged beyond the issue of minimization. He points to the expert's statements that domestic violence syndrome involves a gradual increase of abuse over time, and that some victims develop sleeping disorders, eating disorders, and depression, which may lead to drug and alcohol abuse. The State concedes in its brief that the relevance of this testimony was "marginal" because "there was no evidence that the victims exhibited these behaviors." The State argues, however, that the prejudicial impact was negligible because the expert testified only generally about these effects of domestic violence, and that on cross-examination the defendant established that the expert had never spoken with Shereen, Christina, or the defendant.

The defendant is correct that not all of the expert testimony related strictly to minimization. As the record shows, the expert segued from minimization to sleeping and eating disorders and a discussion of the "just world" hypothesis, a tangent that focused less upon why a victim of domestic abuse might minimize her injuries than how "ordinary" people might interpret a victim's responses to domestic violence. Prior to allowing the expert to testify, the trial court had warned the prosecutor against venturing "into a lot of other areas that seem[] to me . . . are really outside the scope of what's relevant here." Though it appears the prosecutor did not fully heed this warning, neither did the defendant raise any objection as the questionable testimony was received, nor move that it be stricken.

The general rule in New Hampshire is that "a contemporaneous and specific objection is required to preserve an issue for appellate review." *State v. Brinkman*, 136 N.H. 716, 718, 621 A.2d 932, 934 (1993) (quotation omitted). Here, the defendant objected both before and at trial to the need for any expert testimony. The trial court allowed the testimony but, as indicated above, limited its extent. When the testimony strayed beyond this limitation, an objection was required. Having failed specifically to object, the defendant is now precluded from arguing on appeal that this testimony was unfairly prejudicial.

*Affirmed.*

All concurred.