# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2016-0064, <u>State of New Hampshire v. Angel Sanchez</u>, the court on March 23, 2017, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case.  We affirm.

The defendant, Angel Sanchez, appeals his conviction, following a bench trial in Superior Court (<u>Delker</u>, J.), on three charges of attempted witness tampering involving three witnesses.  <u>See</u> RSA 629:1 (2016); RSA 641:5, I (2016).  The defendant contends that "[t]he circumstantial evidence was insufficient to prove that [he] took a substantial step toward the crime of witness tampering or that he had a purpose to induce witnesses to withhold testimony or absent themselves from legal proceedings."  (Capitalization omitted.)

Viewing the evidence in the light most favorable to the State, the trial court could have found the following facts.  The defendant was charged with crimes arising from a home invasion, which the investigating police officer characterized as "heinous."  The primary evidence against him consisted of three witnesses, who had been his cohorts.  While incarcerated awaiting trial, the defendant wrote and sent ten letters to gang members and others.  In many of these letters he represented himself as a member of the Latin Kings.  Letters 5 and 7 each contained a second letter intended for a different recipient (letters 5B and 7B respectively).  Many of the letters contained language or symbols associated with the Latin Kings.

Letters 3 and 7 enclosed photographs of the witnesses, with their names. In letter 6, the defendant offered to send the recipient photographs of the witnesses.  In letter 3 and letter 7B, the defendant discussed sending the recipient copies of the witnesses' statements acquired through discovery. Letter 5B was addressed to a New Hampshire prison inmate and identified one of the witnesses as being "up-state," which meant the witness was in the New Hampshire State Prison.  Letter 9 identified the location of a second witness. Letters 2, 3, 5, 6, 7B, 9, and 10 characterized some or all of the witnesses as "rats" and/or "snitches."  Letters 2, 3, 5, 5B, 6, and 8 all communicated that the State would not be able to convict the defendant without the testimony of the three witnesses.  In letter 7B, the defendant told a member of another gang that the three witnesses were "ratting [him] out" and that the defendant was "<u>not</u> writing this to look for trouble or to go to war."

The trial court found that, reading the letters in concert, "the only logical conclusion is that the Defendant had the intent to get members of his own gang, the Latin Kings, to engage in some sort of retaliation against the three primary witnesses in this case and that he knew, if they would not testify against him, that the case would collapse." The trial court further found that the defendant took a "substantial step" toward witness tampering because he "intended to set in motion a chain of events that would cause these witnesses not to testify against him." The court also found that the defendant believed that two of the witnesses were affiliated with another gang, which might take umbrage at actions against its members, and "that's why [the defendant] was so desperate to . . . avoid retribution or a rival gang war." The trial court found the defendant guilty of attempted witness tampering, and this appeal followed.

Pursuant to RSA 641:5, I, a person is guilty of witness tampering if, "[b]elieving that an official proceeding . . . is pending[,] . . . he attempts to induce or otherwise cause a person to . . . [t]estify . . . falsely[,] . . . [w]ithold any testimony[,] . . . or . . . [a]bsent himself from any proceeding." Pursuant to RSA 629:1, I, "[a] person is guilty of an attempt to commit a crime if, with a purpose that a crime be committed," he takes "a substantial step toward the commission of the crime."

To prevail on a challenge to the sufficiency of the evidence, a defendant must show that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, considering all the evidence and all reasonable inferences therefrom in the light most favorable to the State. State v. Craig, 167 N.H. 361, 369 (2015). We examine each evidentiary item in the context of all the evidence, not in isolation. Id. Circumstantial evidence may be sufficient to support a finding of guilt beyond a reasonable doubt. Id. Further, the trier of fact may draw reasonable inferences from facts proved and also inferences from facts found as a result of other inferences, provided they can be reasonably drawn therefrom. Id. at 369-70. Because a challenge to the sufficiency of the evidence raises a claim of legal error, our standard of review is de novo. Id. at 370.

When the evidence as to one or more elements of the charged offense is solely circumstantial, a defendant challenging sufficiency must establish that the evidence does not exclude all reasonable conclusions except guilt. Id. The proper analysis is not whether every possible conclusion consistent with innocence has been excluded, but, rather, whether all reasonable conclusions based upon the evidence have been excluded. State v. Germain, 165 N.H. 350, 361 (2013), abrogated on other grounds by State v. King, 168 N.H. 340, 345 (2015). "'[T]he reviewing court evaluates the evidence in the light most favorable to the prosecution and determines whether the alternative hypothesis is sufficiently reasonable that a rational [fact finder] could not have found proof of guilt beyond a reasonable doubt.'" Germain, 165 N.H. at 361-62 (quoting State v. Captville, 448 So. 2d. 676, 680 (La. 1984)). In cases predicated upon

2

circumstantial evidence, questions about the reasonableness of theories of innocence are for the fact finder to decide.  Id. at 362.

The defendant argues that "the evidence was susceptible to a reasonable conclusion consistent with innocence."  We first address whether the evidence was sufficient to support the trial court's finding that the defendant took a substantial step toward the commission of witness tampering.  "'Substantial step' means conduct that is strongly corroborative of the actor's criminal purpose."  RSA 629:1, II.  The act of taking a substantial step toward the commission of a crime consists of behavior "'of such a nature that a reasonable observer, viewing it in context[,] could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute.'"  State v. Allcock, 137 N.H. 458, 461 (1993) (quoting United States v. Dworken, 855 F.2d 12, 19-20 (1st Cir. 1988)).

The defendant contends that "the evidence was insufficient to show that [he] communicated the witnesses' information to fellow gang members."  Letter 3 was addressed to Jose Burgos and the salutation was to "Tatuli."  It contained the witnesses' names and photographs and stated, "[T]hey don't have conclusive evidence against us, only what those three characters said."  Letter 4 was also addressed to Burgos, at the same address.  Its salutation was to "Bebo," and it identified the recipient as a member of the defendant's gang.

Based upon these facts, the defendant argues that

> although it may be reasonable to conclude that both letters 3 and 4 were intended for the same recipient and thus, that [the defendant] was providing information about the witnesses to a fellow gang member, it was also reasonable to conclude that the two letters were intended for different recipients and that the letter related to the witnesses was not sent to a gang member.

However, like letter 4, letter 3 referred to the recipient as "little brother."  It assured him that the defendant was not "a snitch" or "a rat" and was "loyal."  Furthermore, in other letters the defendant addressed the recipients by nicknames that differed from the name to which the envelope was addressed.

The defendant argues that "[i]t was common for [him] to include letters intended for other people in his letters."  However, on the two occasions in evidence when he did this, the defendant included instructions to each letter's addressee regarding what to do with the second letter.  Letter 3, containing the witnesses' photographs, does not contain such a direction.

Although in his letters, the defendant did not overtly request that the recipients take action against the witnesses, the trial court could have reasonably inferred, from his repeated and emphatic statements that he would

3

not be convicted without the witnesses and his efforts to identify and locate them, that the defendant's purpose was to encourage others to induce the witnesses to absent themselves or alter their testimony.

The defendant argues that "merely asking someone to commit a crime is not sufficient to prove attempted commission of the crime." See State v. Kilgus, 128 N.H. 577, 584 (1986) (stating that solicitation of another to commit murder does not necessarily constitute attempted murder). However, in this case, the defendant supplied the witnesses' names and photographs and two of the witnesses' locations. Cf. State v. Smith, 163 N.H. 13, 19 (2011) (finding defendant took substantial step toward violating no-contact order when he dialed subject's telephone number, but call did not connect).

We conclude that, taking each evidentiary item in the context of all the evidence and viewing the evidence in the light most favorable to the State, a rational fact finder could have found, beyond a reasonable doubt, that the defendant took a substantial step toward witness tampering. See Craig, 167 N.H. at 369; Germain, 165 N.H. at 361-62.

We next address whether the evidence was sufficient to support the trial court's finding that the defendant acted purposefully to attempt to tamper with the witnesses. Because people rarely explain to others the inner workings of their minds or mental processes, a culpable mental state must, in most cases, as here, be proven by circumstantial evidence. Craig, 167 N.H. at 379. The fact finder is entitled to infer the requisite intent from the defendant's conduct in light of all the circumstances in the case because conduct illuminates intent. Id.

The defendant argues that, even if the trial court inferred that he gave the witnesses' names and photographs to gang members, the evidence was insufficient to show that his purpose was to cause others to tamper with the witnesses. He contends that "gang members are required to reveal informants" and postulates that "he may have been informing others of the witnesses' status so that they knew the witnesses could not be trusted."

However, the defendant's letters did not focus upon the witnesses' untrustworthiness; instead, they focused upon his assertion that, without the witnesses, the State could not convict him. In letter 2, the defendant told his "little brother" that "[t]here are four people ratting me out, so I can't take it to court." In letter 3, he told another "little brother" that "they don't have conclusive evidence against us, only what those three characters said." In letter 5, the defendant said, "[T]hey have NOTHING against us, absolutely NOTHING . . . . The only bad thing is the 3 snitches, we will be f***ed because of them." In letter 5B, he told a state prison inmate that "[t]hey don't got nothing on me BUT there's 3 person[s] or so pointing fingers and giving statements" and gave one of the witnesses' names, identifying him as being

4

"up-state."  He also told the inmate that "if it wasn't for them I got BIG chances to win."  In letter 6, the defendant told yet another "little brother," "The case was built based on three snitches. . . .  Other than that they have nothing against me."  He described the witnesses, provided their names and two witnesses' gang affiliations, and offered to send photographs of them.  In letter 8, the defendant wrote to another person, "They don't have anything against me.  Just the 3 pathetic characters pointing at me."

In letter 7B, addressed to "Jose Prieto Alexis, o[r] Challan, or one of Challan's brothers," the defendant wrote to a member of another gang that the witnesses were "ratting [him] out."  He informed the recipient that "the reason for this letter is to open your eyes and that you know who your friends, colleagues or members of your group are."  The defendant argues that the evidence does not support that "Alexis was a member of a 'rival' gang" and posits that he might have belonged to an "allied gang."  However, regardless of the relationships between gangs, the trial court could have reasonably inferred that meeting his obligation to "share this information so that higher ranking members can decide what, if any, action to take," would not have required the defendant to inform so many people that the witnesses were indispensable to his conviction.

The defendant argues that the evidence was insufficient to show that he "had a purpose that witness tampering be committed" because he "did not ask anyone to contact the witnesses or to do anything to them."  He contends that he "discussed the witnesses' expected testimony in the context of considering whether he should have a trial or reach a plea agreement," and that he "express[ed] his belief that their testimony was a given, not that his decision about whether to go to trial may be affected by future events."

However, the defendant repeatedly stated that the witnesses were "ratting [him] out" and identified them as "snitches."  A gang expert testified that "[b]eing identified as a[n] informant or a rat carries with it a stigma that is dangerous to that person."  Furthermore, the defendant sent the witnesses' photographs to at least two different people.  He also located two of the witnesses and informed his former cellmate of one's location and informed a current prison inmate that the other witness was in prison.

The defendant argues that the evidence did not support the trial court's finding that he intended that the inmate "act as a 'go-between' between himself and his Latin King 'brothers' at the state prison."  However, the defendant described a message that the inmate conveyed to him from one of the defendant's imprisoned "brothers."  Thus, the trial court could have reasonably inferred that the inmate was acting as an intermediary between the defendant and members of his gang who were incarcerated with one of the witnesses.

Several of the cases upon which the defendant relies are inapposite because they address the sufficiency of the evidence to prove witness

5

tampering, not attempted witness tampering.  See State v. Carr, 167 N.H. 264, 267 (2015) (stating defendant convicted of witness tampering); Craig, 167 N.H. at 364 (same); State v. DiNapoli, 149 N.H. 514, 515 (2003) (same); State v. Baird, 133 N.H. 637, 638 (1990) (same).  The attempt statute requires the State to identify the intended offense, but does not require it to plead and prove the elements of the intended offense.  State v. Casanova, 164 N.H. 563, 565 (2013).  Furthermore, the fact that certain evidence has been found sufficient in a given case does not require the State to use that evidence in every case.

The defendant quotes extensively from People v. Dubarry, 31 N.E.3d 86, 96 (N.Y. 2015).  However, in that case, the State "failed to submit evidence that defendant communicated with anyone about the witness and his possible testimony."  Dubarry, 31 N.E.3d at 96.  The court concluded that "the only possible connection between defendant and the source of the threats [was] defendant's association with the Israelite congregation."  Id. at 97.  In contrast, in the case at hand, viewing the evidence in the light most favorable to the State, the defendant communicated extensively with others about the witnesses and their impact on his case.  Cf. United States v. Rivera, 292 F. Supp. 2d 827, 834, 837 (E.D. Va. 2003) (stating that evidence was sufficient under Federal Rule of Evidence 804(b)(6) to admit murdered witness's prior statements when defendant stated that he wished to kill witness and that "government need not proffer evidence that [defendant] was directly involved in [witness's] murder or that [defendant] took any affirmative steps to procure her silence"); United States v. Irving, 682 F. Supp. 2d 243, 265 (E.D.N.Y. 2010) (stating associate's employment by senior attorney and presence in his office insufficient to show associate's participation in senior attorney's witness tampering schemes); Douglas v. State, 951 P.2d 651, 668-69 (Okla. Crim. App. 1997) (stating attorney-client relationship insufficient, by itself, to show defendant authorized attorney to attempt to tamper with witness).

Taking each evidentiary item in the context of all the evidence and viewing the evidence in the light most favorable to the State, we conclude both that the defendant has failed to establish that the evidence does not exclude all reasonable conclusions except guilt, and that a rational fact finder could have found, beyond a reasonable doubt, that the defendant acted with the purpose that the crime of witness tampering be committed.  See Craig, 167 N.H. at 369; Germain, 165 N.H. at 361-62.

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.

**Eileen Fox,
Clerk**

6